UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CANAL INSURANCE COMPANY,** | : | |
| Plaintiff, | | Case No. 2:24-cv-1969<br>**Chief Judge Sarah D. Morrison**<br>**Magistrate Judge Kimberly A. Jolson** |
| v. | | |
| **MS EXPRESS, LLC,** | : | |
| Defendant. | | |

## ORDER

This matter is before the Court on the Motion for Default Judgment filed by Canal Insurance Company (Mot., ECF No. 10). For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

**I.  PROCEDURAL HISTORY**

Canal Insurance initiated this action against MS Express, LLC in April 2024, seeking a declaration of its rights and obligations under an insurance policy. (ECF No. 1.) MS Express was served with notice of process via delivery to a registered agent pursuant to Federal Rule of Civil Procedure 4 (ECF No. 5, PAGEID # 195), but it failed to respond to the Complaint. Accordingly, on June 28, 2024, Canal Insurance applied to the Clerk for an entry of default under Federal Rule of Civil Procedure 55(a). (ECF No. 7.) Default was entered shortly thereafter. (ECF No. 9.)

Now before the Court is Canal Insurance's Motion for Default Judgment (ECF No. 10). The time for responding has passed, and MS Express has filed no response.

## II.     FACTUAL BACKGROUND

"Once default is entered, the defaulting party is deemed to have admitted all of the well-pleaded allegations in the complaint regarding liability[.]" *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see also* Fed. R. Civ. P. 8(b)(6). The following factual allegations from the Complaint are deemed admitted due to MS Express's default.

### A.     The Policy

MS Express is an Ohio company that provides contract transportation services. (ECF No. 1, ¶ 5.) In December 2022, Canal Insurance issued a "Symbol 7" Commercial Motor Vehicle Insurance Policy ("Policy") to MS Express providing $1,000,000 in liability coverage to designated drivers and vehicles through December 2023. (*Id.*, ¶¶ 14, 15; Policy, ECF No. 1-3, PAGEID # 44–45, 135.) Davron Takhirov, the named owner of MS Express, signed the Policy on the company's behalf. (ECF No. 1, ¶¶ 1, 12; Policy, PAGEID # 31.)

The Policy obligates Canal Insurance to cover claims or suits against MS Express for bodily injury or property damage caused by an accident, stating:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

(ECF No. 1, ¶ 16; Policy, PAGEID # 52.) The Policy defines "covered autos" as:

**SECTION 1 -- COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered

2

> next to a coverage on the Declarations designate the only "autos" that are covered "autos".
>
> **A. Description Of Covered Auto Designation Symbols:**
>
> **7      Specifically Described "Autos"**
>
> Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

(ECF No. 1, ¶ 17; Policy, PAGEID # 51.) The Policy contains endorsements for policyholders to identify the specific vehicles to be covered. (ECF No. 1, ¶ 20; Policy, PAGEID # 46.) Vehicles must be enumerated in the Policy as "covered autos" for coverage to attach. (ECF No. 1, ¶¶ 18, 19; Policy, PAGEID # 45, 52.) If a policyholder obtains a new vehicle during the coverage period, Canal Insurance must receive notice of the acquisition within thirty (30) days. (ECF No. 1, ¶¶ 18, 19; Policy, PAGEID # 52.) Additionally, if a policyholder rents or leases a vehicle, the following terms apply[1]:

> **B. Owned Autos**
>
> 3. An "auto" that is leased or rented to you without a driver, under a written agreement for a continuous period of at least six months that requires you to provide primary insurance covering such "auto", will be considered a covered "auto" you own.

(ECF No. 1, ¶ 31; Policy, PAGEID # 52.)

---

[1] The Court observes that the Motor Carrier Endorsement in the Policy states that "For any operations [a policyholder] engage[s] in as a 'motor carrier', the Policy is changed as follows: A. Paragraph B.3. of Owned Autos under Section I - Covered Autos does not apply." (Policy, PAGEID # 75.)

3

The Policy defines an "insured" in relation to a "covered auto." (ECF No. 1, ¶ 22; Policy, PAGEID # 52–53, 75.) Policyholders are considered "insureds" for any "covered auto," as are certain others who use, own, or lease "covered autos." (*Id.*) Specifically excluded from the Policy's coverage are, in relevant part:

> Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":
>
>> (1) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.
>>
>> (2) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.
>
> However, Paragraph a. above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

(ECF No. 1, ¶ 23; Policy, PAGEID # 75.) As to "insureds," the Policy provides:

> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

(ECF No. 1, ¶ 21; Policy, PAGEID # 52, 76.)

    **B.    Collision and State-Court Lawsuit**

On June 26, 2023, Francisco Betancourt filed a complaint in California state court after he was involved in a motor vehicle accident. (ECF No. 1, ¶ 6; ECF No. 1-

4

1, PAGEID # 18–19.) He alleges that he suffered bodily injuries and other damages after his vehicle was struck by a vehicle driven by Arash Chalmsazi on April 21, 2023. (ECF No. 1, ¶¶ 9–10; ECF No. 1-1, PAGEID # 19.) Mr. Betancourt later amended his complaint to add MS Express as a defendant, claiming that Mr. Chalmsazi was negligently operating a vehicle owned by MS Express in the course and scope of his employment for MS Express. (ECF No. 1, ¶¶ 8–10; ECF No. 1-2, PAGEID # 24.) As of the date of this Order, Mr. Betancourt's case remains pending.

At the time of the accident, Mr. Chalmsazi was driving a freightliner truck and hauling a trailer.[2] (ECF No. 1, ¶ 24; ECF No. 1-4, PAGEID # 181.) No schedule in the Policy listed the truck or the trailer as "covered autos" at that time. (ECF No. 1, ¶¶ 25, 28; Policy, PAGEID # 132.) The truck was added to the schedule of "covered autos" in the Policy on June 30, 2023—two months after the accident and four days after the state-court action was filed. (ECF No. 1, ¶ 34; Policy, PAGEID # 132, 136.) Mr. Chalmsazi is not (and was never) enumerated in any of the driver schedules in the Policy. (ECF No. 1, ¶¶ 25, 36; Policy, PAGEID # 50, 121, 152, 157, 170, 175.)

After hearing of the accident and state-court lawsuit, Canal Insurance attempted to contact MS Express to determine whether it owed MS Express a duty to defend against the tort claims. (ECF No. 1, ¶¶ 11–12.) Following multiple unsuccessful efforts, Canal Insurance issued a reservation of rights communication

---

[2] MS Express had been leasing the truck from another motor carrier since 2022, an arrangement Canal Insurance was not aware of until it learned of the state-court action. (ECF No. 1, ¶¶ 30, 33; ECF No. 1-5, PAGEID # 188.) The owner of the trailer is unknown. (ECF No. 1, ¶ 29.)

5

to the counsel involved in the state-court lawsuit. (*Id.*, ¶ 12.) To date, neither MS Express nor Mr. Takhirov has cooperated with Canal Insurance's efforts to investigate the accident or the state-court litigation. (*Id.*, ¶ 13.)

## III. DISCUSSION

In the instant federal action, Canal Insurance seeks declarations from the Court that (1) at the time of the accident, the truck was not a "covered auto" and Mr. Chalmsazi was not an "insured" under the Policy, such that the conditions precedent necessary to trigger coverage were not satisfied; (2) the Policy does not cover Mr. Betancourt's claims against MS Express and Mr. Chalmsazi in the state-court action or any resulting judgment or damages; and (3) Canal Insurance is not obligated to defend or indemnify MS Express or Mr. Chalmsazi for the allegations asserted in the state-court action. (ECF No. 1, ¶¶ 42, 46, 50, Prayer for Relief.) Canal Insurance also requests a declaration that Mr. Betancourt is bound by the Court's coverage determination. (*Id.*, Prayer for Relief.)

### A. Subject Matter Jurisdiction

Although the Declaratory Judgment Act (28 U.S.C. § 2201) affords the Court jurisdiction to grant declaratory relief, the Court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). Prior to granting declaratory relief and entering default judgment in this case, the Court must determine whether it should exercise its jurisdiction to do so. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (courts may use discretion to determine whether to exercise jurisdiction to grant declaratory relief).

In the Sixth Circuit, courts consider five factors in deciding whether a case is appropriate for declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). "The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

Canal Insurance does not address these factors in its Motion for Default Judgment. Nevertheless, the Court finds that each *Grand Trunk* factor is met.

### 1. Settlement of the Controversy (Factor One)

Two lines of precedent have developed in the Sixth Circuit with respect to the application of the first *Grand Trunk* factor when an underlying state-court action is pending. *See Flowers*, 513 F.3d at 555. "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (collecting cases). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the

7

parties which is ongoing in state court." *Id.* (collecting cases). The *Flowers* court observed that "the contrary results in these cases might [ ] be explained by their different factual scenarios." *Id.* "Primarily, the key factual differences concern whether or not the same parties are involved in the underlying state-court action, and whether coverage turns on either a straightforward legal question or a factual question that is involved in the state-court litigation." *Am Nat'l Prop. & Cas. Co. v. Wilson*, No. 18-cv-116-DLB-CJS, 2019 WL 1876797, at *3 (E.D. Ky. Apr. 26, 2019).

By way of example, in *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004), the court found that a declaratory judgment would not settle the controversy. In that case, the coverage determination turned on whether the injured party was an employee of the insured at the time of his injury, which was a "fact-based" and "very close" question of state law that was also being considered in the state-court proceeding. *Id.* at 813–14. For this reason, and because the injured party was a plaintiff in the state-court action but "was not made a party to the declaratory judgment action," such that "any judgment in the federal court would not be binding as to him and could not be res judicata in the [state-court] action," the court held that "a declaration of insurance coverage would not resolve the controversy." *Id.* at 814.

Conversely, in *Northland Insurance Co. v. Stewart Title Guarantee Co.*, 327 F.3d 448, 449 (6th Cir. 2003), an insurance company sought a declaration that it had no duty to indemnify the insured title company against a title insurance underwriter's state-court claims. The court found that, as a matter of law, the policy

8

at issue excluded coverage for the damages alleged in the state-court complaint. *Id*. at 458. This meant that the coverage determination "did not have to await the resolution of factual issues in the state action." *Id*. at 454. Another factor supporting the court's decision was that the insurer "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id*.; *see also Flowers*, 513 F.3d at 556 (noting that insurer was not party to state-court lawsuit, so coverage issue "was not and could not be considered in the state court action").

Here, Canal Insurance is not a party to the California action, and neither the scope of insurance coverage nor the obligation to defend is before the state court. And Canal Insurance has not named the state-court plaintiff (Mr. Betancourt) as a party to this declaratory judgment action. As such, there is some concern that "any judgment in the federal court would not be binding as to [the state-court plaintiff]." *Bituminous*, 373 F.3d at 814.

Nevertheless, the Court finds that resolving this declaratory-judgment action will sufficiently settle the controversy vis-à-vis Canal Insurance and MS Express because a coverage determination in this case does not require a fact-based analysis or very close questions of state law. Instead, the Court need look only to the plain language of the Policy and whether the truck and its driver were listed therein at the time of the accident. The Court's coverage determination is a separate issue from the adjudication of Mr. Betancourt's tort claims and would not complicate the

9

state court's analysis of liability issues. The first factor weighs in favor of jurisdiction.

### 2. Clarification of the Legal Relations at Issue (Factor Two)

As with the first factor, there is a split in Sixth Circuit case law regarding the second *Grand Trunk* factor—namely, "whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 438 (6th Cir. 2018) (quoting *Flowers*, 513 F.3d at 557). "[C]ourts tend to consider this factor with the first factor, reaching the same conclusion for both." *Id.* However, some courts "have treated [the second factor] as distinct from the first factor, reasoning that the first factor examines whether the declaratory action will resolve the coverage dispute as well as the underlying action, whereas [the second factor] is focused just on the insurance-coverage dispute." *Id.*; *see, e.g.*, *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008).

This Court agrees with the *Flowers* court that "the former line of precedent [is] more persuasive than the latter." *Flowers*, 513 F.3d at 557. Resolution of Canal Insurance's declaratory judgment suit would clarify the legal relationship between Canal Insurance and MS Express. As a party to this action, MS Express would be bound by the Court's coverage determination. In addition, as mentioned above, the state court will not address this insurance coverage dispute in determining whether MS Express and Mr. Chalmsazi are liable to Mr. Betancourt. Because there appears

10

to be little risk that a ruling on insurance coverage would be duplicated in the state court action, a declaratory judgment would clarify the legal relations at issue here— namely, the contractual duties owed by Canal Insurance to MS Express. Accordingly, the second factor supports the Court's exercise of jurisdiction.

### 3. Procedural Fencing or Race for Res Judicata (Factor Three)

The third *Grand Trunk* factor "is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Mass. Bay*, 759 F. App'x at 438 (internal quotations and citations omitted). Here, nothing indicates that Canal Insurance had any improper motive or engaged in any unfair tactics. "Filing a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself," *Flowers*, 513 F.3d at 558, and Canal Insurance waited nearly one year after Mr. Betancourt filed his state-court action to file the instant federal action. Moreover, Canal Insurance's efforts to clarify its legal obligations to MS Express in federal court cannot be construed as an attempt to create a race to judgment when there is no indication that the state court will address the coverage issue and when Canal Insurance is not a party to that state-court action. "A declaratory relief action over an insurance coverage dispute, where the insurer is not a party to the underlying action and which was initiated after the underlying state court action, does not suggest procedural fencing or a race for res judicata." *Allstate Vehicle & Prop. Ins. Co. v. Donie*, 630 F. Supp. 3d 887, 891 (E.D. Mich. 2022).

11

Finally, the Court emphasizes MS Express's lack of defense in this case and failure to identify any dishonest motive on Canal Insurance's part. Courts "are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558. This Court declines to do so here, and the third factor supports jurisdiction.

### 4. Friction Between Federal and State Courts (Factor Four)

When analyzing the fourth *Grand Trunk* factor to determine whether exercising jurisdiction over this case would increase friction between federal and state courts, the Court must consider three additional sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560. The "mere existence of a state court proceeding," however, "is not determinative of improper federal encroachment upon state jurisdiction." *Cantrell Funeral Home*, 506 F. Supp. 3d at 545.

Although there is some potential for increased friction between the federal and state courts by exercising jurisdiction in this case—as matters of insurance are generally left to state courts—the Court finds that this fourth factor does not weigh heavily under the facts of this case, given that (1) MS Express has defaulted and is deemed to have admitted the factual allegations in the Complaint; and (2) Canal Insurance is not a party to the state-court action. Nothing suggests that the state

12

court is considering the issues presented in the instant matter. This fourth factor weighs in favor of the exercise of jurisdiction.

### 5. Availability of Alternative Remedy (Factor Five)

The final *Grand Trunk* factor asks whether a "better or more effective" remedy exists in place of a declaratory judgment. *Grand Trunk*, 746 F.2d at 326. MS Express, in choosing not to file an answer or otherwise defend this matter, has not argued that a state court declaratory judgment action (or any other remedy) would be better or more effective than a federal court declaratory judgment action. Even if MS Express presented such an argument, however, the Court concludes that the alternative state court action would not necessarily present a better remedy. The fifth factor does not cut against the exercise of the Court's jurisdiction.

\* \* \*

Because this case satisfies the *Grand Trunk* factors for jurisdiction under the Declaratory Judgment Act, the Court considers the merits of Canal Insurance's default judgment request below.

### B. Default Judgment

Once default has been entered, the Court may rule on default judgment against the defendant with or without a hearing. Fed. R. Civ. P. 55(b). Although the well-pled factual allegations of a complaint are accepted as true for the purpose of determining liability, the Court must still determine whether those facts state a claim upon which relief may be granted. *Zinganything*, 158 F. Supp. 3d at 672 (citing *J&J Sports Prods., Inc. v. Rodriguez*, No. 1:08-cv-1350, 2008 WL 5083149, at \*1 (N.D. Ohio Nov. 25, 2008)). Nonetheless, "those allegations relating to the

13

amount of damages suffered are ordinarily not [accepted as true], and a judgment by default may not be entered without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Bringer v. JAO Distribs., Inc.*, No. 1:14-cv-252, 2014 WL 3689147, at *1 (S.D. Ohio July 23, 2014) (Black, J.) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Based on the well-pled allegations in the Complaint, and the exhibits submitted by Canal Insurance in support of its Motion for Default Judgment, the Court concludes that there is sufficient basis for determining the extent of Canal Insurance's obligations to MS Express without the need for a hearing. By its default, MS Express has admitted that its employee, Mr. Chalmsazi, was involved in a vehicular accident in April 2023 in California; that neither Mr. Chalmsazi nor the truck he was driving were listed on any schedule in the Policy at the time the accident occurred; and that no Policy exception operated to trigger coverage. (ECF No. 1, ¶¶ 1, 25, 28, 36.) As such, Canal Insurance has stated a claim for declaratory relief that it does not owe MS Express coverage under the terms of the Policy.

### C. Declaratory Relief

Canal Insurance requests declarations from the Court that (1) the truck was not a "covered auto" and Mr. Chalmsazi was not an "insured" under the Policy; (2) the Policy does not cover Mr. Betancourt's claims against MS Express and Mr. Chalmsazi in the state-court action or any resulting judgment or damages; and

14

(3) Canal Insurance is not obligated to defend or indemnify MS Express or Mr. Chalmsazi against the state-court allegations. (ECF No. 1, ¶¶ 42, 46, 50, Prayer for Relief; ECF No. 10, PAGEID # 212–13.) The Court finds that Canal Insurance is entitled to these declarations.

However, Canal Insurance also seeks a declaration that Mr. Betancourt is bound by the Court's coverage determination. (ECF No. 1, Prayer for Relief.) Canal Insurance provides no legal authority for this request. It has not joined Mr. Betancourt as a party in this federal action that it initiated. Nor does it argue that Mr. Betancourt was "in privity" with it or MS Express. Therefore, the Court lacks jurisdiction over Mr. Betancourt and will not declare that he is bound by its coverage determination.

### D. Attorneys' Fees and Costs

Finally, Canal Insurance seeks recovery of its attorneys' fees, costs, and expenses incurred in litigating this matter and the state-court matter. (ECF No. 10, PAGEID # 211–13.) However, "[t]he party seeking attorneys['] fees bears the burden of documenting [its] entitlement to the award." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999). Canal Insurance points to no contractual or statutory provision in the Policy or elsewhere entitling it to fees and costs expended in this action or in the separate, state-court action. And though the Sixth Circuit has not addressed awarding attorneys' fees under the Declaratory Judgment Act, other circuits have held that this statute does not create an independent basis for such fees and costs. *See Berkley Reg'l Ins. Co. v. Greater E. Credit Union*, 438 F. Supp. 3d 857, 867 (E.D.

15

Tenn. 2020) (citing cases). Canal Insurance has not demonstrated that it is entitled to the costs and fees it requests.

## IV. CONCLUSION

For the reasons set forth herein, Canal Insurance's Motion for Default Judgment (ECF No. 10) is **GRANTED in part** and **DENIED in part**.

To the extent Canal Insurance moves for default judgment, the Motion is **GRANTED**, and default judgment is entered against MS Express on all counts. The Court issues a declaratory judgment that (1) the truck was not a "covered auto" and Mr. Chalmsazi was not an "insured" under the Policy; (2) the Policy does not cover Mr. Betancourt's claims against MS Express and Mr. Chalmsazi in the state-court action or any resulting judgment or damages; and (3) Canal Insurance is not obligated to defend or indemnify MS Express or Mr. Chalmsazi against the state-court allegations.

The Court **DENIES** the Motion to the extent it seeks a declaration binding Mr. Betancourt to the coverage determination made herein. The Motion is also **DENIED** as to Canal Insurance's request for attorneys' fees, costs, and expenses.

The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

    **IT IS SO ORDERED.**

/s/ Sarah D. Morrison  
**SARAH D. MORRISON, CHIEF JUDGE**  
**UNITED STATES DISTRICT COURT**